### BEAUFORT TRUCK GROWERS' ASSOCIATION v. SEABOARD AIR LINE RAILWAY COMPANY

#### (132 S. E., 819)

1. EVIDENCE—EVIDENCE BY SELLER AS TO AMOUNT OF DAMAGES BECAUSE OF RAILROAD'S FAILURE TO MAKE SHIPMENT IN REASONABLE TIME, TAKEN FROM ACCOUNT OF SALES SENT BY BUYER, HELD COMPETENT AS NOT BEING HEARSAY.—In an action to recover damages for alleged failure of railroad to deliver lettuce within reasonable time, evidence given by shipper as to returns received from shipment, taken from account of sales sent to him from buyer, *held* competent and not hearsay.

2. EVIDENCE—EVIDENCE AS TO VALUE OF LETTUCE, TAKEN FROM PRODUCE REPORTS, HELD COMPETENT IN ACTION AGAINST RAILROAD FOR FAILURE TO DELIVER LETTUCE WITHIN REASONABLE TIME.—In action for damages because of alleged failure of railroad to ship lettuce within reasonable time, evidence as to reasonable value, taken from produce reports covering particular period, *held* competent as showing value.

3. TRIAL—EXCEPTION TO CHARGE BECAUSE OF ERROR IN USING "INSUF-
FICIENT" FOR "SUFFICIENT," UNDOUBTEDLY BEING STENOGRAPHIC MIS-
TAKE, WILL BE OVERRULED, PARTICULARLY WHERE JURY COULD NOT
HAVE BEEN MISLED HAD THE WRONG WORD BEEN USED IN ORAL
CHARGE WHEN TAKEN AS WHOLE.—Exception to charge because
of error in using "insufficient" for "sufficient," undoubtedly steno-
grapher's mistake, will be overruled, particularly where in any
event jury were not misled when charge was taken as whole.

Before DENNIS, J., Beaufort, Fall Term, 1924.   Affirmed.

Action by the Beaufort Truck Growers' Association, for
use of Beaufort Farms Products Company, against the
Seaboard Air Line Railway Company.   Judgment for plain-
tiff, and defendant appeals.

The action is for damages because of alleged failure of
defendant to deliver lettuce shipped from South Carolina
to New York City within a reasonable time, which resulted
in deterioration and spoilage of the lettuce, and loss in
value thereby.

Defendant's objections to the admission of evidence al-
leged to be hearsay is shown by exceptions as follows:

First, because his Honor, the presiding Judge, erred in
admitting in evidence over objection testimony based on
the account of sale rendered the plaintiff by H. G. Miles &
Co., the error being that the document was not proved or
supported by oath, and the testimony was hearsay evidence.
The incompetent testimony was:

"Q. What returns did you get from that shipment?   A.
$9.22.

"Q. That is a copy of the returns?   (Exhibiting paper
to the witness.)   A. Yes, sir.

"Q. What were the gross returns?   A. $301.

"Mr. Thomas:   Where do you get your information
from?   A. From the account sales sent from H. G. Miles
& Co.

"The Court:   I think that's admissible.   (Objection
noted by the stenographer.)"

Second, because his Honor, the presiding Judge, erred in

allowing plaintiff to introduce testimony as to the price that lettuce should have brought during the time in question in New York, when the witness was in Beaufort, S. C., at the time, and admitted he had no personal knowledge of the fact, the error being that the testimony was necessarily hearsay. The incompetent testimony was:

"Q. State what the market price was at that time? A. The market price as stated here, from 50 cents to $5, per basket.

"Q. Fifty cents to $5? A. Yes, sir.

"Q. State what was the 50-cent variety? A. I guess pretty poor.

"Q. What was the $5 variety? A. That's supposed to represent the top price; that was for lettuce from this country."

Third, because his Honor, the presiding Judge, erred in allowing the witness, Hull, to testify to the price of lettuce in New York, the testimony being based on "reports" received by him, the error being that testimony based on reports of some third person is hearsay. The incompetent testimony was:

"Q. Then, from your mind and from your head state what was the market value of lettuce from this section at that time? A. Well, I have not got the produce report showing for that day covering the South Carolina lettuce, the Florida lettuce, and lettuce from other sections, but from the memorandum I made on here at this time (witness testifying from copy of claim) South Carolina lettuce should have been selling that day or the day before for $5.

"Q. What would have been the average price for South Carolina lettuce at that time? A. In the neighborhood of $3, and I believe this claim is filed on the basis of $3.

"Q. That's what it should have brought? A. Yes, sir; that would have been the average range.

"Q. Did you receive any reports of that yourself? Did you receive any reports that you have made this claim from?

A. I may have had a telegram reporting it to me, but I did not file the claim until we received the returns."

*Messrs. W. J. Thomas* and *Buist & Buist,* for appellant, cite: *Hearsay testimony:* 110 U. S., 574; 22 C. J., 199; 10 R. C. L., 958. *Amount of damages for delay in delivery by carrier must be proved:* 45 Sup. Ct., 437; 33 S. E., 606. *Effect of Carmack Amendment on liability of initial carrier for delay caused by connecting carrier:* 4 R. C. L., 907. *Initial carrier entitled to all defenses of the connecting carriers:* 219 U. S., 186; 168 F., 987. *No liability for negligence not the proximate cause of injury:* 105 S. C., 406. *Court may not charge on facts:* Const. of 1895, Art. V, Sec. 26. *Court may not express opinion as to facts:* 85 S. C., 273; 67 S. E., 300; 31 S. C., 235.

*Mr. George W. Beckett* for respondent.

April 27, 1926.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a verdict of the jury rendered in favor of the plaintiff. The cause was tried at Beaufort before Judge Dennis at the fall term, 1924; the amount of the verdict was for $844.27, the full amount claimed. At the close of the plaintiff's testimony a motion was made by the defendant for a nonsuit, which motion was overruled by his Honor.

There are seven exceptions which raise three questions:

(1) Evidence clearly hearsay was admitted.

1, 2    These exceptions are overruled; his Honor was clearly right in his ruling on the admission of the evidence; it was competent and pertinent.

(2) Erroneous and incorrect instruction was given.

3    We have no doubt that his Honor used the word "sufficient" when the exception has it "insufficient."

No doubt it was the mistake of the stenographer, unintentional on the part of the stenographer. The presid-

ing Judge is usually very careful, and even if he made a slip of the tongue and used the word "insufficient," it was not harmful or prejudicial, as it could not have misled the jury taken in connection with his whole charge. His charge as a whole was a correct declaration of the law applicable to the facts, and these exceptions are overruled.

(3) The plaintiff failed to prove alleged damages.

These exceptions are overruled. There was ample evidence to sustain the verdict.

All exceptions are overruled and judgment affirmed.

Mr. Chief Justice Gary and Messrs. Justices Blease and Stabler concur.

Mr. Justice Cothran dissents.

Mr. Justice Blease: I concur in the opinion of Mr. Justice Watts that there should be an affirmation in this cause. Some of the testimony of the witness Butler, to which Mr. Justice Cothran has called attention, may not have been strictly admissible under the rule as laid down in the case between the parties to this action, reported in 121 S. E., 554; 128 S. C., 1, which case cited as authorities *Gwathmey v. Foor Hotel Co.,* 113 S. E., 688; 121 S. C., 237, and *Copeland Co. v. Davis,* 119 S. E., 19; 125 S. C., 449, although I am inclined to think that the testimony was competent. But even if that particular testimony, to which objection was made, should not have been admitted, it appears that the witness had previously testified, from his own knowledge, the following fact: "I got $9 and some few cents; I have forgotten the cents now." Later, when he was shown a copy of the returns, he was able to state the exact amount of $9.22. Certainly, under the rule as stated in the case in 121 S. E., 554; 128 S. C., 1, there was no harmful error committed.

As to the testimony of the witness Hull as to the market price of the produce, it appears that the witness had made records himself at the time the claim was filed with the railroad company, and, further, that it was a part of his business as secretary and treasurer of a Truck Growers' Asso-

ciation to keep information as to market prices of produce from time to time; that he got daily reports as to market conditions.  It occurs to me that in this day of progress a man may be able to testify as to market prices in New York of produce, such as cotton and vegetables, without even going there.  Newspapers and bulletins contain these daily. Sellers often use the telegraph and telephone to get market quotations, and even the radio is used for the purpose of disseminating information of this kind.

As times and conditions change, it is well to be reminded of the words of Lord Ellenborough in *Pritt v. Fairclough* (3 Campb., 305) that: "The rules of evidence must expand according to the exigencies of society."  The law of evidence should develop and improve in the interest of ascertaining the truth so that justice may be properly administered.  As so well said in R. C. L., p. 861:

"Common experience rather than technical rules should be adopted as the test.  Mercantile and industrial life, producing, as they do, nearly all the transactions of men that come before the Courts of law and equity, are essentially practical.  * * * The Courts need not discredit what the common experience of mankind relies upon.  Judge Cooley once said that 'Courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon.'"

A careful reading of the record convinces me that there was no error on the part of the trial Judge in his charge to the jury.  When he said, "The plaintiff says that this—that this was not transported promptly, that a reasonable time for carrying that would be 60 hours, that although it was shipped on the 21st it was not delivered until the 28th," the Judge was evidently referring to the allegations of the complaint.  Paragraph 3 of the complaint contained an allegation to the same effect as that stated in the language quoted from the charge.  These words of the Judge occurred almost at the beginning of his charge.  It is apparent he was

explaining to the jury the allegations of the complaint. Right after his statement as to these allegations, he proceeded to instruct the jury as to the contents of the answer of the defendant. It was the duty of the Judge to acquaint the jury with the contentions of the parties as set forth in their pleadings.

It is clear to me that either the stenographer or the printer, perhaps both, are responsible for what is alleged to be another error in the Judge's charge. In the charge, as it comes to this Court, the Judge is made to use these words:

"Now, in an action of this kind, the initial carrier, that is, the Seaboard Air Line, is just as liable in this action for any negligence of its connecting line, to wit, the Pennsylvania Railroad, as it would be of any negligence of its own, and, on the contrary, *no reasonable or legal and insufficient excuse,* given by the Pennsylvania Railroad for not handling a shipment more promptly, would apply to the defendant Seaboard."

The appellant in its fifth exception has changed the word "insufficient" to "sufficient," making the last part of the clause, quoted from, to read as follows:

"And on the contrary *no reasonable or legal and sufficient excuse* given by the Pennsylvania Railroad for not handling a shipment more promptly would apply to the defendant Seaboard."

It will be readily seen that if the words contained in the exception are used with the substitution of the word "any" for the word "no" that there was absolutely no error in the instruction given by the Court. Any one acquainted with the art of stenography knows how easy it is for a little mark put down to mean "any" to be transcribed to read "no." It is very likely that the trial Judge has never seen the record for appeal. When we read the whole charge in this case, I think it is obvious that the Judge did not use the language attributed to him, and I would not favor a reversal because of the evident mistake on the part of a printer or stenographer.

I do not think it out of place to say here that sometimes attorneys for respondents are a little careless in seeing that cases are properly made up for appeal. In justice to their clients, and to Judges who have tried their causes, and to save this Court time and trouble, and sometimes to avoid reversals of causes, it would be well for attorneys for respondents to see that printed records come to this Court free of errors of printers and stenographers.

MR. JUSTICE STABLER concurs.

MR. JUSTICE COTHRAN: I think that there were serious and reversible errors upon the trial of this case.

The cause of action was for damage to a shipment of lettuce and romaine from Lobeco, S. C., to the city of New York, caused as alleged by unreasonable delay in the shipment. The burden of proof was upon the plaintiff to show: (1) That the goods were received by the initial carrier in good order; (2) that there was an unreasonable delay in the transportation; (3) that injury resulted as a consequence of that delay; (4) the market value of the produce in New York at the time it should have been delivered; (5) the market value of the produce at the time it was actually received in New York ready for delivery to the consignee.

It may be assumed that there was evidence tending to establish the first, second, and third requirements of proof. As to the fourth, a witness was allowed to testify from the claim which he had made out and presented to the Railroad Company, which he states was made up "from records in my possession at the time"; he did not state he had made such records. and if he had done so, those records would have been the best evidence. The question appears to me to be concluded by the case between the same parties as here, reported in 121 S. E., 554; 128 S. C., 1, where in an opinion by Mr. Justice Watts, it was held that the testimony was inadmissible. It is true that in that case it was further held that, inasmuch "as there is enough evidence without this to sustain the verdict," the error was not a reversible one. In

the case at bar the testimony objected to was all of the evidence upon that point.

As to the fifth, a witness was allowed to testify from the account sales which had been made out in New York by another party and transmitted by mail to the plaintiff at Beaufort. The same rule should be applied. See cases cited in 121 S. E., 554; 128 S. C., 1.

The question of unreasonable delay was a vital one in the case. Notwithstanding the evidence for the plaintiff that the standard time for the transportation, between the two points was 4 days, 96 hours, the presiding Judge charged the jury, "The plaintiff says that this—that this was not transported promptly, that a reasonable time for carrying that would be 60 hours, that although it was shipped on the 21st it was not delivered until the 28th"; which I think was clearly a charge upon the facts, a repetition of the testimony, not permissible under the Constitution.

An unaccountable error appears in the transcript of the Judge's charge. It appears thus:

"Now, in an action of this kind the initial carrier, that is, the Seaboard Air Line, is just as liable in this action for any negligence of its connecting lines, to wit, the Pennsylvania Railroad, as it would be for any negligence of its own, and on the contrary *no* reasonable or legal and *insufficient* excuse given by the Pennsylvania Railroad for not handling a shipment more promptly would apply to the Seaboard."

I do not doubt that the use of the word "insufficient" was a slip of the tongue or of the pencil, and that "sufficient" was intended; but, substituting the one word for the other, the error becomes more glaring. What evidently was intended was, "On the contrary *any* reasonable or legal and sufficient excuse given." It thus requires two corrections to properly convey the correct legal proposition.

For these reasons I think that there should be a new trial.